## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**RAFAEL GARCIA, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**v.**

**COMMERCIAL ACCEPTANCE COMPANY,**

**Defendants.**

Civ. No. 2:19-cv-1058-WJM-AME

**OPINION**

---

**WILLIAM J. MARTINI, U.S.D.C.**

    Plaintiff Rafael Garcia ("Plaintiff") brings this putative class action on behalf of himself and all others similarly situated against defendant Commercial Acceptance Company ("Defendant") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 37 & 38. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

## I.    BACKGROUND[1]

    On or about August 2, 2017, Plaintiff suffered an injury and was transported via ambulance to St. Joseph's Hospital in Paterson, New Jersey. (PSOMF ¶¶ 1-3). Immediately following his injury, a third party called the ambulance for Plaintiff, who neither knew the

---

[1] The facts in this section are taken from the parties' statements of material facts and the exhibits attached thereto. For ease of reference, the Court will use the following abbreviations to refer to documents in the record:

    "**PSOMF**" – Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 38-4)

    "**Hersh Decl.**" – Declaration of Lawrence Hersh, Esq. in Support of Plaintiff's Motion for Summary Judgment (ECF. No. 38-3)

    "**Garcia Decl.**" – Declaration of Rafael Garcia in Support of Plaintiff's Motion for Summary Judgment (ECF No. 38-2)

    "**DSOMF**" – Defendant's Statement of Material Facts (ECF No. 37-5)

    "**Salvo Decl.**" – Declaration of Cindy D. Salvo, Esq. in Support of Defendant's Motion for Summary Judgment (ECF No. 37-2)

name of the company that provided the ambulance transportation nor signed any paperwork with respect thereto. (PSOMF ¶¶ 3-5).

On January 24, 2018, Defendant sent Plaintiff a collection letter (the "Collection Letter") seeking payment of an outstanding balance of $1,103.00 owed to a creditor (the "Creditor") identified as "MONOC Ambulance Service C". (DSOMF ¶ 1; Salvo Decl., Ex. A). The Collection Letter provided, in relevant part:

> The creditor listed above has assigned your account to our agency for collection. Your entire balance is to be paid directly to our office at the above address. If your account balance is not satisfied, further collection activity will result. You are hereby notified that your credit rating may be negatively affected if you fail to resolve your obligation.

(Salvo Decl., Ex. A). The Collection Letter also provided information on when and how Plaintiff may dispute the validity of the debt (the "Debt Dispute Language"):

> Unless you notify this office within 30 days of receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt valid. If you notify this office in writing within 30 days of receiving this notice that you dispute the validity of this debt, this office will obtain verification of this debt or a copy of the judgment against you and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

The Creditor's registered corporate name is "Monmouth-Ocean Hospital Services Corporation." (PSOMF ¶ 23). "MONOC Ambulance Service C" is neither an independent registered business entity nor a registered associated business name for Monmouth-Ocean Hospital Services Corporation in New Jersey. (*Id.* at ¶¶ 22-23).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not every factual dispute will preclude summary judgment, and those concerning "irrelevant or unnecessary" facts will not factor into the Court's analysis. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, "a fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248). Similarly, a dispute with respect to a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of establishing that no genuine issue of material fact remains for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence. . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. If, however, the burden of persuasion at trial would be on the nonmoving party, the movant may satisfy its burden by either: (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* (citations omitted). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (emphasis in original and internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). This requires the nonmoving party to present actual evidence that creates a genuine dispute for trial – reliance on unsupported assertions, speculation, or conclusory allegations is insufficient to defeat a properly supported motion for summary judgment. *See Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex*, 477 U.S. at 324); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (explaining that a nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

In deciding a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Put differently, the Court's sole task in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The standard for deciding whether to grant a summary judgment motion is the same even where, as here, the parties files cross-motions. *See In re Cooper*, 542 F. Supp. 2d 382, 385-86 (D.N.J. 2008). In ruling on cross-motions for summary judgment, the Court must evaluate the competing motions independently under the applicable standard. *See Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-0016 (JBS), 2009 WL 540675, at *4 (D.N.J. Mar. 3, 2009).

## III.   DISCUSSION

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). To achieve these purposes, the FDCPA imposes several restrictions and obligations on third-party debt collectors, providing consumers with a private right of action against any such debt

3

collections who violate its provisions. *See Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 264-65 (3d Cir. 2019) ("As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)).

To that end, in evaluating FDCPA claims, the Court employs a "least sophisticated debtor" standard to ensure the protection of "all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection practices." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quotations omitted). While the "least sophisticated debtor" standard "is lower than the standard of a reasonable debtor, it preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (alterations in original) (quotations omitted). The standard is an objective one, and, though forgiving, does not permit a debtor to "disregard responsibilities or adopt 'bizarre or idiosyncratic interpretations of collection notices.'" *Devito v. Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 568-69 (D.N.J. 2012) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)); *see also Jensen*, 791 F.3d at 419.

"To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The parties agree that the first three elements of the Plaintiff's FDCPA claim are satisfied, and, as such, the Court need only resolve questions as to the final element: whether Defendant has violated a provision of the FDCPA. In his Complaint, Plaintiff alleged several such violations in the Collection Letter: (1) it did not properly identify the creditor to whom the debt was owed in violation of § 1692g(a)(2); (2) it provided false, misleading, and confusing information on when and how Plaintiff was required to dispute the validity of the debt in violation of §§ 1692g(a)(3)-(5); and (3) it made false, deceptive, and misleading representations to try and collect the debt by threatening that Plaintiff's credit rating may be negatively affected if he failed to pay the outstanding balance in violation of §1692e(5) and e(10).[2] In moving for summary judgment, however, Plaintiff raises an additional argument for the first time: that Defendant sought to collect a debt which was not owed because it was covered by a pending workers' compensation claim in violation of § 1692f(1). The Court addresses each claimed violation, beginning with Plaintiff's new arguments relating to his workers' compensation insurance coverage.

## A.   § 1692f(1) Claim: Workers' Compensation Allegations

---

[2] The Complaint also alleges a general violation of § 1692f by "using unfair or unconscionable means to collect or attempt to collect any debt." Compl. ¶ 50(C); *see also* 15 U.S.C. § 1692f.

A threshold issue in ruling on the parties' motions is whether the Court may consider Plaintiff's evidence concerning the submission and resolution of a workers' compensation claim in connection with his injury and subsequent ambulance bill. In moving for summary judgment, Plaintiff claims in his sworn affidavit that (1) he was injured while at work as a school custodian, (2) his supervisor called the ambulance for him, (3) he submitted a claim to his workers' compensation insurance carrier and was told that all of his medical bills, including any bill for the ambulance, would be covered, and (4) prior to receiving the Collection Letter, he spoke to a representative of the ambulance provider and informed them that the outstanding balance for the ambulance was subject to a pending workers' compensation claim and would be paid by the workers' compensation insurance carrier. (Garcia Decl. ¶¶ 2-13). Based on these facts, Plaintiff now asserts that Defendant's attempt to collect a medical bill subject to a pending workers' compensation claim directly from Plaintiff, who was not liable for any such payment, is a violation of the FDCPA's prohibition on "unfair or unconscionable means to collect or attempt to collect any debt" not authorized by agreement or permitted by law. *See* 15 U.S.C. § 1692f(1).

Regardless of whether there is any merit to Plaintiff's argument,[3] the Court will not consider these new allegations in ruling on either party's motion. It is well-settled that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008). Nor can Plaintiff actively seek summary judgment in his favor by fundamentally recharacterizing the nature of his claims through arguments and facts untethered to his Complaint. Here, the only allegation in the Complaint regarding Plaintiff's injury and the underlying medical debt is that "[p]rior to January 24, 2018, Plaintiff allegedly incurred a financial obligation to Monmouth-Ocean Hospital Service Corporation based upon certain medical services rendered to him." (Compl. ¶ 12). There are no allegations in the Complaint regarding the nature and surrounding circumstances of Plaintiff's injury nor any mention of workers' compensation insurance whatsoever. Moreover, these new allegations do not relate to or clarify any material factual issue with respect to the specific FDCPA violations that were alleged by Plaintiff in the Complaint.

---

[3] It appears that this is an issue of first impression in this District. Neither the courts in this District nor the Third Circuit have addressed whether an attempt to collect a debt subject to a pending workers' compensation claim under applicable New Jersey law is a violation of the FDCPA. Other courts outside this District which have considered the issue in the context of other state workers' compensation statutes, however, have recently found that such collection attempts do indeed violate the FDCPA's prohibition on unconscionable debt collection practices. *See, e.g.*, *Kottler v. Gulf Coast Collection Bureau, Inc.*, 847 F. App'x 542, 544 (11th Cir. 2021) (finding attempt to collect medical debt subject to workers' compensation from employee who was not liable for such debt under Florida law violated FDCPA); *Edwards v. BC Servs., Inc.*, Civ. No. 18-cv-3322-STV, 2019 WL 672632, at *9 (D. Colo. Dec. 10, 2019) (finding violation of FDCPA for attempt to collect debt subject to workers' compensation and therefore not owed by consumer plaintiff under Colorado law); *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1188 (D. Utah 2019) (considering workers' compensation claims under Utah law).

*See Trust v. Durst*, Civ. No. 12-5255 (JBS/AMD), 2015 WL 7720481, at *5 (D.N.J. Nov. 30, 2015) (disregarding new allegations in plaintiff's opposition to summary judgment where they did not "generate a dispute material to the existing claims" in the case). As such, Plaintiff cannot now put forth a detailed set of new facts and arguments to support an entirely new theory of liability against Defendant for purposes of summary judgment.

Plaintiff argues that his workers' compensation-based claim is fairly encompassed by the original allegations in the Complaint because he broadly alleged an unconscionable collection practice in violation of 15 U.S.C. § 1692f. In other words, Plaintiff argues that because he has asserted a claim for a violation of § 1692f in the Complaint, Defendant has sufficient notice of any set of facts or arguments that might support liability thereunder. This is plainly incorrect for two reasons.

First, § 1692f is a catch-all provision that cannot form the basis of a separate claim for relief for conduct that is addressed explicitly by another provision of the FDCPA. *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013). Although the Complaint does appear to include an allegation that Defendant violated § 1692f, there is not even a vague or fleeting reference to § 1692f(1) or any other identification of an "unfair or unconscionable means to collect or attempt to collect any debt" beyond the three specific violations Plaintiff did allege in the context of other FDCPA provisions. In the absence of any underlying factual allegations from which the Court could infer a separate violation of the FDCPA, the only plausible inferences the Court may draw from, and the only claims fairly encompassed by, Plaintiff's reference to § 1692f in the Complaint are those which Plaintiff has already pled: that the Collection Letter's alleged failure to identify the real creditor, statements regarding how and when to dispute the validity of the debt, and threats to negatively affect credit ratings are, in addition to violations of §§ 1692g(a)(2)-(4) and §§1692e(5), (10), also a violation of §1692f. As such, Plaintiff's claim under § 1692f, as actually alleged in the Complaint, is merely duplicative of his other FDCPA claims, and does not provide Plaintiff an anchor to raise new arguments, new facts, and new theories of liability that themselves find no footing in the Complaint. *See id.* (granting summary judgment on § 1692f claim where plaintiff failed to allege any facts to infer violation of § 1692f beyond allegations supporting claims under other sections of the FDCPA); *Evans v. Portfolio Recovery Assocs., LLC*, Civ. No. 15-1455 (RBK/JS), 2016 WL 4059645, at *6 (D.N.J. July 27, 2016) (same).

Second, it is obvious that the mere inclusion of a claim for a violation of a statute in a Complaint based upon specific plausible factual allegations does not then broadly encompass all other violations of that statute arising out of facts that are not alleged in the Complaint. *See, e.g.*, *Berrada v. Cohen*, 792 F. App'x 158, 161-62 n.3 (3d Cir. 2019) (declining to consider implied-in-fact contract claim on summary judgment where complaint only asserted breach of an express contract); *McLaud v. Indus. Resources, Inc.*, 715 F. App'x 115, 121 n.5 (3d Cir. 2017) (refusing to consider arguments concerning joint venture liability with respect to products liability and negligence claims because they were raised for the first time in opposition to motion for summary judgment); *Ocean City Express Co. v. Atlas Van Lines, Inc.*, 194 F. Supp. 3d 314, 324 n.15 (D.N.J. 2016)

(disregarding allegations related to defendant's alleged scheme to boycott revenue source in violation of NJFPA where the operative complaint only included NJFPA claims arising out of termination of a contract without good cause, and rejecting argument that "scheme" allegations fell within broad claim that the defendant had violated the relevant statute); *Holland v. Macerich*, 2011 WL 6934969, at *3 (D.N.J. Dec. 29, 2011) (granting summary judgment with respect to new retaliation claims based on facts not alleged or alluded to in operative complaint).

Accordingly, because Plaintiff did not make any claims or allegations in his Complaint with respect to his workers' compensation insurance coverage and its relationship to Defendant's attempt to collect on the ambulance bill, and has not sought leave to add such claims or allegations, they are not properly before the Court and will not be considered. To the extent Plaintiff seeks summary judgment on any claim brought under § 1692f based on his workers' compensation allegations, Plaintiff's motion is **DENIED**. Defendant's motion for summary judgment with respect to any such claim is **GRANTED**.

### B.    § 1692g(a)(2): Failure to Name the Creditor

Plaintiff argues that the Collection Letter incorrectly identifies the Creditor as "MONOC Ambulance Service C" instead of "Monmouth-Ocean Hospital Services Corporation" in violation of § 1692g(a)(2)'s notice requirements. Section 1692g(a) requires a debt collector, within five days of an initial communication with a consumer in connection with the collection of any debt, to send to such consumer a written notice, called a "validation notice," providing information with respect to the debt owed. 15 U.S.C. § 1692g(a). The subsections of §1692g(a) identify the particular information that must be contained in these validation notices, including "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2).

To comply with § 1692g(a)(2), a validation notice must be able to effectively convey the identity of the creditor to the least sophisticated debtor. *See Gross v. Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864, 866 (3d Cir. 2019). This requires that the validation notice "be clear enough that a naïve consumer comes away from the notice understanding the identi[t]y of the creditor." *Rodriguez v. Gem Recovery Sys., LLC*, Civ. No. 18-16251 (KM) (JBC), 2021 WL 3030334, at *9 (D.N.J. July 19, 2021). In other words, "the least sophisticated consumer must be able to 'recognize the name' and 'understand, from that name, with whom the debt originated.'" *Miller v. I.C. Sys.*, Civ. No. 18-13624, 2022 WL 741029, at *6 (D.N.J. Mar. 11, 2022) (quoting *Rodriguez*, 2021 WL 3030334, at *9)). Notwithstanding these requirements, "nothing in the FDCPA expressly requires that debt collectors use a creditor's full business name." *Rodriguez*, 2021 WL 3030334, at *9 (quotations omitted). Indeed, a collection notice may identify a creditor by a "name under which it usually transacts business, a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); *see also Rodriguez*, 2021 WL 3030334, at *9; *Leonard v. Zwicker & Assocs., PC*, 713 F. App'x 879, 882-83 (11th Cir. 2017); *Iadevaio*

*v. LTD Fin. Servs., L.P.*, 17-cv-4112 (JFB) (SIL), 2019 WL 4094922, at *6 (E.D.N.Y. Aug. 29, 2019).

Plaintiff argues that because he did not personally request the ambulance, observe any details about the service provided, and, as a resident of Passaic County, was not familiar with "Monmouth-Ocean" or the acronym "MONOC," the Collection Letter's identification of "MONOC Ambulance Service C" as the Creditor is necessarily incorrect and misleading in violation of § 1692g(a)(2). The Court disagrees.

The unique facts of this case undermine the Court's reliance on the factors usually used to resolve questions under § 1692g(a)(2). For example, the relationship between Plaintiff and the Creditor is limited, as far as the record reveals, to a single emergency use of an ambulance service, which Plaintiff himself did not request and apparently did not carefully scrutinize. There is thus no history between the Creditor and Plaintiff from which the Court could determine whether "MONOC Ambulance Service C" was a name that was likely to be understood as referring to "Monmouth-Ocean Hospital Service Corporation." *See Rodriguez*, 2021 WL 3030334, at *9 ("Often courts will examine the history between creditor and debtor to determine whether, *e,g,*, an acronym is sufficient to identify the creditor."). Similarly, the record does not clearly establish that the name "MONOC Ambulance Service C." or the acronym "MONOC" was so widely known that there could be no ambiguity or confusion by the least sophisticated debtor as to the true identity of the Creditor. *See id.* ("Courts may also consider whether the name used by the collector is a trade name widely known to many."); *see also Hammett v. AllianceOne Receivables Mgmt., Inc.*, 2011 WL 3819848, at *5 (E.D. Pa. Aug. 30, 2011) (finding collection notice identifying creditor as "PNC Bank" was sufficiently clear such that the least sophisticated debtor would recognize to whom they owed the debt). Indeed, the parties have not cited, and the Court has been unable to find, a case dealing with this question in the context of a similar one-off emergency transaction between a debtor and creditor.

Notwithstanding these complications, however, the Court is satisfied that the use of the name "MONOC Ambulance Service C" sufficiently identifies the Creditor. The Court first notes that the least sophisticated debtor standard is an objective one. As such, the mere fact that Plaintiff did not order the ambulance or was unfamiliar with the acronym "MONOC," does not end the inquiry. Indeed, under Plaintiff's theory, because of his incapacitation, which necessitated the ambulance in the first place, he would not have been aware of any name used to identify the company providing such ambulance services, rendering any attempt to collect on a debt therefor a violation of the FDCPA. That is clearly not how the statute is intended to function.

To that end, the use of the name "MONOC *Ambulance Service* C" (emphasis added) clearly and effectively identifies to the least sophisticated debtor the nature of the debt, how it originated, and to whom it is owed. Even the least sophisticated debtor would understand that a debt owed to "MONOC Ambulance Service C" relates to that debtor's use of an ambulance service, which, as Defendant notes, is hopefully a rare occurrence. In that sense, this apparent trade name is far more helpful and informative than the more

8

generic use of the Creditor's full business name "Monmouth-Ocean Hospital Services Corporation." Forcing Defendant to use a less helpful, but technically accurate, corporate name at the expense of a more direct and informative trade name (even an unregistered one) would "run contrary to the purpose of the FDCPA because it would potentially create more confusion for the least sophisticated [debtor]." *Iadevaio*, 2019 WL 4094922. After all, "[t]he principle undergirding all of these cases is that a debt collection notice need not use any particular name for a creditor, but rather is required to use a name that adequately conveys the identity of the creditor." *Rodriguez*, 2021 WL 3030334, at *10.

Accordingly, the Court finds that the Collection Letter did not violate § 1692g(a)(2).

**C.     § 1692g(a)(3)-(5): Debt Dispute Language**

Plaintiff claims that the Collection Letter is impermissibly confusing with respect to how a consumer may dispute the validity of the debt. Specifically, Plaintiff claims that the use of the word "if" in the Debt Dispute Language is unclear whether a dispute as to the validity of the debt must be made in writing and must be made within 30 days of the receipt of the Collection Letter. The Court disagrees.

In addition to the name of the creditor to whom the debt is owed, Section 1692g(a) requires that the written notice from a debt collector to a consumer contain: (1) "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector," 15 U.S.C. § 1692g(a)(3); (2) "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector," 15 U.S.C. § 1692g(a)(4); and (3) "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor," 15 U.S.C. § 1692g(a)(5).

The Third Circuit has recently clarified that § 1692g(a)(3) does not require debt validity disputes to be in writing, and that oral disputes within 30 days are permissible. *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 590 (3d Cir. 2020) (en banc). As such, any argument by Plaintiff that the Debt Dispute Language was required to make explicit that all disputes must be in writing is an incorrect statement of the law and Defendant's failure to include such language is not a violation of the § 1692g(a)(3).

This clarification also puts into context the Collection Letter's use of the word "if" in the Debt Dispute Language. As the Third Circuit explained, the overall structure of § 1692g makes clear how that section is meant to function:

> Subsection (a)(3) merely calls for "the consumer" to "dispute[ ] the validity of the debt" in order to rebut the statutory presumption of validity. But (a)(4) requires "the consumer [to] notif[y] the debt collector *in writing*" before forcing the collector to mail documentation verifying the debt. (emphasis

added). And (a)(5) similarly demands that the consumer make a "*written request within the thirty-day period*" to compel the collector to "provide the consumer with the name and address of the original creditor, if different from the current creditor." (emphasis added). Subsection (b) then echoes (a)(4) and (5), obliging collectors to "cease collection ... until ... obtain[ing] verification" if the debtor "notifie[d] the debt collector" of a dispute or requested the creditor's identity "*in writing*." (emphasis added).

*Riccio*, 954 F.3d at 587. Understood in this light, it is evident that the use of the word "if" in the Debt Dispute Language does no more than recognize the fact that a consumer may choose to dispute the validity of a debt orally, but that, as the statute requires, in order to receive verification of the debt or information on the original creditor, such disputes and requests must be in writing. Indeed, the Debt Dispute Language tracks the language of the statute nearly word-for-word and, as such, necessarily conveys the required information in an accurate and intelligible manner to the least sophisticated debtor. *Id.* at 594 ("A collection notice can never mislead the least sophisticated debtor by relying on the language Congress chose.").

The cases Plaintiff relies on in support of its argument that the use of the word "if" is confusing were premised on the now-outdated view that § 1692g(a)(3) required *all* disputes to be in writing and, in light of this recent Third Circuit guidance, are not persuasive. *See, e.g.*, *Joseph v. Rickart Collection Sys., Inc.*, Civ. No. 19-5413, 2019 WL 2281581, at *3-4 (D.N.J. May 29, 2019); *Cadillo v. Stoneleigh Recovery Assocs., LLC*, Civ. No. 17-7472-SDW-SCM, 2017 WL 6550486, at *3 (D.N.J. Dec. 21, 2017).

Accordingly, because the Third Circuit has since determined that debt disputes may be made orally and the Debt Dispute Language tracks closely to the wording of FDCPA itself, the Court concludes that the Collection Letter does not violate §§ 1692g(a)(3)-(5).

### D.   § 1692e(5) and e(10): Threatening Negative Credit Impact

Plaintiff's final claim under the FDCPA is that the Collection Letter's warning to Plaintiff that his "credit rating may be negatively affected if [he] fail[ed] to resolve [his] obligations" was a false, deceptive, or misleading representation in violation of § 1692e. Compl. ¶¶ 30-31. Section 1692e broadly prohibits a debt collector's use of any false, deceptive, or misleading representations or means to collect any debt, and provides a non-exhaustive list of violative conduct, including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). "A debt collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Knight v. AR Resources, Inc.*, Civ. No. 20-cv-7495, 2021 WL 5027989, at *3 (quoting *Knight v. Midland credit Mgmt., Inc.*, 755 F. App'x 170, 174 (3d Cir. 2018)). For an allegedly false or misleading statement of a debt collector to be actionable under § 1692e, it must be material – that is, it must have "the potential to affect

10

the decision-making process of the least sophisticated debtor." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015).

At the outset, the Court notes that Plaintiff's primary, if not only, theory in support of his § 1692e claims is that Defendant's statement that his credit rating may be negatively affected was false because (1) his debt was subject to a workers' compensation claim; (2) New Jersey law prohibits reporting unpaid medical debt to credit reporting agencies until the claim has been finally settled or adjudicated; and, therefore, (3) Defendant knew that no credit reporting would ever actually occur with respect to the subject debt. Plaintiff is correct that a debt collector may not suggest the possibility of adverse legal or financial consequences to a debtor for failure to pay an outstanding debt based on events that will never occur. *See Schultz v. Midland Credit Mgmt., Inc.*, 905 F.3d 159, 163 (3d Cir. 2018) (finding FDCPA violation where validation notice stated that debt collector would "report forgiveness of debt as required by IRS regulations" because amount of debt fell below applicable IRS reporting thresholds, and thus, no reporting could possibly occur). However, the Court has already determined that Plaintiff's arguments arising out of his workers' compensation claim is untethered to the basic facts and claims raised in the Complaint and cannot be raised for the first time in briefing on cross-motions for summary judgment. *See supra* § III.A. Accordingly, to the extent Plaintiff's § 1692e claims are premised on Defendant's inability to report the subject debt due to his workers' compensation claim, he has failed to establish the necessary elements of his claims.

The only remaining question with respect to Plaintiff's § 1692e claim is whether the Collection Letter's reference to potential negative credit reporting violates § 1692(e) outside of the context of Plaintiff's workers' compensation allegations. The Court concludes it does not. Validation notices which "accurately reflec[t] an outcome that could come to pass . . . cannot be viewed as 'false and misleading' even to the least sophisticated debtor." *Bordeaux v. LTD Fin. Servs., L.P.*, Civ. No. 2:16-0243 (KSH) (CLW), 2021 WL 4438127, at *5 (D.N.J. Sept. 28, 2021). Indeed, so long as it does not "undermine the validation notice," the FDCPA does not generally prohibit a debt collector from "inform[ing] a debtor that failure to repay a debt could result in adverse consequences to their credit rating." *See Rodriguez v. Gem Recovery Sys., LLC*, Civ. No. 18-16251 (KM) (JBC), 2021 WL 3030334, at *8 (D.N.J. July 19, 2021).

Here, the Collection Letter does no more than simply inform Plaintiff about consequences that may come to pass if the debt is ultimately not paid. It does not suggest that negative credit reporting *will* occur unless immediate payment is made. Nor does the surrounding language in the Collection Letter suggest a threatening context that might lead an unsophisticated consumer to make an immediate payment of the debt in full despite the protections provided by the subsequent Debt Dispute Language that appears later in the Collection Letter. *Cf. Id.*, at *8 (finding language in collections letter that debt collector's policy was to report delinquent account information to credit reporting agencies violated FDCPA where surrounding language indicated that debt collector would use "any collection activity" to collect the debt owed, that the creditor's debt was immediately due or past due, and that full payment would avoid further collection efforts). Finally, there is

no evidence that Defendant does not actually engage in such credit reporting or any other evidence from which the Court may infer that Defendant had no intention of reporting Plaintiff's unpaid debt. *See Knight*, 2021 WL 5027989, at *4-5.

Accordingly, the Court finds that the Collection Letter does not violate § 1692e.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED** in full. Defendant's cross-motion for summary judgment is **GRANTED** in full. An appropriate order follows.

_____

**William J. Martini, U.S.D.J.**

**Date: September 12, 2022**